FILED
JAN 05 2009
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS E. BELLOWS ON BEHALF OF HIMSELF AND OTHERS SIMILARLY SITUATED, <br><br> PLAINTIFFS, <br><br> V. <br><br> NCO FINANCIAL SYSTEMS, INC., <br><br> DEFENDANT. | Case No.: 07-CV-1413 W (AJB) <br><br> FED. R. CIV. P. 53(f) REPORT AND RECONMENDATION REGARDING AN AWARD OF ATTORNEY FEES AND COSTS |

The undersigned Judge Herbert B. Hoffman (Ret.) was appointed by the Court as a Special Master in this case per Fed. R. Civ. P. 53. As required by the Court's Order of Preliminary Approval of Class Action Settlement (hereinafter referred to as the "Preliminary Approval Order"), the undersigned submits this Report and Recommendation regarding Plaintiffs' counsel's request for Court approval of the $300,000 in attorneys' fees and costs agreed to be paid upon the terms and conditions in the Settlement

Agreement. The undersigned respectfully submits that:

## I. INTRODUCTION.

A. On August 2, 2007, plaintiff, Douglas E. Bellows (hereinafter referred to as "Plaintiff" or "Class Representative"), filed the above-captioned class action lawsuit (hereinafter referred to as the "Lawsuit") against defendant, NCO Financial Systems, Inc. (hereinafter referred to as "NCO"). Plaintiff asserted class claims against NCO under the Telephone Consumer Protection Act (hereinafter referred to as the "TCPA"), 47 U.S.C. § 227. Specifically, Plaintiff alleged that NCO violated the TCPA by calling his cellular telephone, without "prior express consent," using an "automatic telephone dialing system" and using an "artificial or prerecorded voice."

B. On August 14, 2008, Plaintiff and NCO (hereinafter jointly referred to as the "Parties") entered into a Class Action Settlement Agreement (hereinafter referred to as the "Agreement"), which is subject to review under Fed. R. Civ. P. 23. Further, NCO agreed to a 12-month Stipulation and Order for Injunction (hereinafter referred to as the "Stipulated Injunction").

C. On August 29, 2008, the Parties filed their Joint Motion for Preliminary Approval of Class Action Settlement Agreement (hereinafter referred to as "Motion for Preliminary Approval"), along with the Agreement.

D. On September 5, 2008, the undersigned Special Master filed his first Report and Recommendation, recommending that the Court grant the Parties' Motion for Preliminary Approval and enter the requested Preliminary Approval Order.

E. On September 10, 2008, based upon the Parties' Motion for Preliminary Approval and the undersigned's first Report and Recommendation, the Court entered the Preliminary Approval Order.

F. Per the Preliminary Approval Order, the undersigned was also required to submit a second Report and Recommendation regarding Final Approval, and also this Report and Recommendation regarding Plaintiff's attorneys' request for Court approval of the agreed-upon amount of $300,000 to be paid by Defendant to Plaintiff's counsel for attorneys' fees and costs of suit.

G. On November 24, 2008, the Parties filed their Motion for Final Approval of Class Action Settlement Agreement (hereinafter referred to as "Motion for Final Approval").

H. As required by the Preliminary Approval Order, a Fairness Hearing was held by the undersigned Special Master on December 2, 2008 to determine whether the Lawsuit satisfies the applicable prerequisites for class action treatment and whether the proposed settlement is fundamentally fair, reasonable, adequate, and in the best interest of the Class Members and should be approved by the Court.

I. On December 2, 2008 the Special Master found the Lawsuit satisfied the applicable prerequisites and entered his Report and Recommendation, requesting the Court enter the Final Order and Judgment as well as the stipulated injunction. Plaintiff's counsel now seeks final approval of its attorney fees and costs and that request is addressed herein.

## II. FACTS AND PROCEDURAL HISTORY.

On August 2, 2007, Plaintiff filed this Lawsuit against NCO, an international debt collection company. On behalf of himself and others similarly situated, Plaintiff asserted two TCPA claims against NCO. First, Plaintiff alleged that NCO committed negligent violations of the TCPA. For this first claim, and on behalf of himself and the putative class, Plaintiff sought $500 per violation and injunctive relief under 47 U.S.C. § 227(b)(3)(B).

REPORT AND RECOMMENDATION REGARDING        3
AN AWARD OF ATTORNEY FEES AND COSTS                                07-CV-1431 W (AJB)

Second, Plaintiff alleged that NCO committed knowing and/or willful violations of the TCPA. For this second claim, Plaintiff sought for himself and the putative class $1,500 per violation and injunctive relief under 47 U.S.C. § 227(b)(3)(B) and § 227(b)(3)(C). Plaintiff also alleged that the Court had jurisdiction under 28 U.S.C. § 1332, per the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA"), Pub. L. No. 109-2, 119 Stat. 4, because the aggregate amount of the class claims exceeded $5 million.

In an attempt to settle the Lawsuit, the Parties participated in extensive settlement discussions and 3 all day mediation sessions before the undersigned on September 19, 2007, October 16, 2007, and December 6, 2007.

On December 27, 2007, at the Parties' request, the Court appointed the undersigned to serve as a Special Master per Fed. R. Civ. P. 53. The undersigned was appointed to assist with all settlement issues, including issuing necessary reports and recommendations on proposed findings and orders in the case.

In addition to the mediation sessions described above, plaintiff's counsel and defense counsel report that they had numerous telephone conferences, several in-person meetings, and exchanged numerous emails regarding settlement. Through the mediation sessions, telephone conferences, meetings, and emails, the Parties finally reached a settlement on August 14, 2008, which is memorialized in the Agreement filed with the Court.

On August 29, 2008, the Parties filed their Motion for Preliminary Approval. In compliance with CAFA, on September 4, 2008, NCO served written notice of the proposed class settlement on the Attorney General of the United States and attorney generals of each state.

On September 5, 2008, the undersigned Special Master filed his Report and Recommendation, recommending that the Court grant the Parties' Motion for Preliminary Approval and enter the requested Preliminary Approval Order.

On September 10, 2008, based upon the Parties' Motion for Preliminary Approval and the undersigned's Report and Recommendation, the Court entered the Preliminary Approval Order. Pursuant to the Preliminary Approval Order, the Court, among other things, (i) preliminarily certified (for settlement purposes only) a class of plaintiffs (hereinafter referred to as the "Class Members") with respect to the claims asserted in the Lawsuit; (ii) preliminarily approved the proposed settlement and Stipulated Injunction; (iii) appointed Plaintiff as the Class Representative; (iv) appointed HYDE & SWIGART and the LAW OFFICES OF DOUGLAS J. CAMPION as Class Counsel; and, (v) set the date and time of the Fairness Hearing for December 2, 2008, at 9:30 A.M.

Per the Agreement, the Parties engaged in confirmatory discovery following entry of the Preliminary Approval Order. No party has asked to set aside the Settlement Agreement or be relieved from their responsibilities after such confirmatory discovery.

On November 24, 2008, the Parties filed their Motion for Final Approval, and on December 2, 2008, pursuant to this Court's Preliminary Approval Order, a Fairness Hearing was held by the undersigned to determine whether the Lawsuit satisfies the applicable prerequisites for class action treatment and whether the proposed settlement is fundamentally fair, reasonable, adequate, and in the best interest of the Class Members and should be approved by the Court.

## III. REQUEST FOR AN AWARD OF CLASS COUNSEL'S ATTORNEYS' FEES, COSTS AND EXPENSES.

Pursuant to the Agreement, NCO has agreed that it will not object to Class Counsel's application for attorneys' fees, costs, and expenses, so long as the application does not seek more than $300,000. Class Counsel has filed an application for fees, costs, and expenses totaling $300,000. In this Report and Recommendation, the undersigned Special Master will address Class Counsel's request for $300,000 in fees, costs, and expenses.

## IV. DISCUSSION

### A. THE ATTORNEYS' FEES AWARDED SHOULD BE CALCUATED BASED ON THE LODESTAR FORMULA.

The U.S. Supreme Court has explained how to calculate attorney's fees' awards:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. The calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.

*Hensley v. Eckerhart*, 461 U.S. 424, 433; 103 S. Ct. 1933, 1939; 76 L. Ed. 2d 40 (1983). *See also Thorpe v. Collection Information Bureau, Inc., supra*, 963 F. Supp. at 1174. The lodestar is calculated by multiplying the number of hours reasonably spent on the litigation, multiplied by a reasonable hourly rate. *Hensley v. Eckerhart, supra*, 461 U.S. 424, 433; *Serrano v. Priest*, 20 Cal.3d 25, 48 (1977) (Serrano III); *Friend v. Kolodzieczak*, 72 F.3d 1386, 1389 (9th Cir. 1995).

In awarding attorneys' fees the court has discretion over the amount to be awarded. *Hensley v. Eckerhart, supra*, 461 U.S. at 436-437; *Rumford v. City of Berkeley*, 31 Cal.3d 545, 559 (1982). However, since determination of the lodestar figure is fundamental to calculating the amount of the award, the court's exercise of discretion must be based on the lodestar adjustment method. *Kern River Pub. Access v. City of Bakersfield*, 170 Cal.App.3d 1205, 1228 (1985). Under federal law, in setting the lodestar rate this Court

is required to consider the relevant factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69 (9th Cir. 1975), cert. denied sub nom. *Perkins v. Screen Extras Guild, Inc.*, 425 U.S. 951 (1976). The court need not discuss specifically each factor so long as the record shows that the court considered the factors called into question by the case at hand. *Newhouse v. Robert's Ilima Tours, Inc.*, 708 F.2d 436, 441 (9th Cir. 1983).

In determining the reasonably hourly rate, courts look to the prevailing market rates in the relevant community with close attention paid to the fees charged by lawyers of reasonably comparable skill, experience, and reputation. *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992), citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Serrano IV, supra*, 32 Cal. 3d at 643. An adjustment for delay in payment is an appropriate factor in determining what constitutes a reasonable attorneys' fee under federal fee-shifting statutes. *Missouri v. Jenkins*, 491 U.S. 274, 283-284 (1989). The district court has discretion either to adjust to current rates, or to make an interest adjustment to the historical rates. *Gates v. Deukmejian*, 977 F.2d 1300, 1314-1315 (9th Cir. 1992), citing *Missouri v. Jenkins, supra*. A fee award at current rates is intended to compensate prevailing attorneys for lost income they might have received through missed investment opportunities, as well as lost interest. *Id.* at 1315.

### B. COUNSEL'S HOURLY RATES ARE REASONABLE.

The U.S. Supreme Court has stated: "The statute and legislative history establish that 'reasonable fees' under section 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel." *Blum v. Stenson, supra*, 465 U.S. at 895, 104 S. Ct. at 1547 (footnote omitted).

Plaintiff seeks the following hourly rates to be confirmed by the two firms litigating on behalf of the Plaintiff and the Class.

### 1. The Law Offices of Douglas J. Campion

Douglas J. Campion, one of the Plaintiff's attorneys, seeks an hourly rate of $450. Based upon the declarations submitted by Mr. Campion, both in support of Plaintiff's prior request for Preliminary Approval of the Settlement and seeking to be appointed Class Counsel, and the declaration filed in support of this fee request, this Court finds such an hourly rate of $450 is reasonable for Mr. Campion. The evidence establishes Mr. Campion has practiced law for more than 30 years, almost 20 of which has been in litigation of class actions on behalf of plaintiffs. The evidence shows he has had extensive experience in class action litigation, including derivative and other consumer representative actions. Mr. Campion has litigated similar cases before the undersigned who is familiar with his legal experience.

### 2. Hyde & Swigart

Hyde & Swigart, one of the firms representing Plaintiff, seeks approval of hourly rates of $355 for partners and $195 for associates. They also seek approval of an hourly rate of $95 for paralegals and law clerks. Based upon the declarations submitted by Mr. Swigart, both in support of Plaintiff's prior request for Preliminary Approval of the Settlement and seeking to be appointed Class Counsel, and the declaration submitted in support of this fee request, this Court finds such hourly rates are reasonable for Hyde & Swigart. The evidence submitted establishes Hyde & Swigart litigate consumer cases almost exclusively and have litigated over 500 cases in the past five and one half years. Hyde & Swigart employ attorneys licensed in three different states. They handle cases throughout California and Arizona having offices in San Diego and Riverside, California as well as Phoenix, Arizona. The evidence states that Hyde & Swigart have handled

numerous class actions and are responsible for at least 12 published decisions. Mr. Swigart has litigated similar cases before the undersigned who is familiar with his legal experience. The following hourly rates for Hyde & Swigart are appropriate:

|  | Rate: |
|---|---|
| Partners | $355 |
| Associates | $195 |
| Law clerks/Paralegals | $95 |

### C. COUNSEL'S RATES ARE CONSISTENT WITH MARKET RATES.

Based on all the declarations filed by Plaintiff's counsel, and the declarations from other members of the legal community, some of which are attached as Exhibits to counsel's declarations, and the other evidence submitted regarding rates charged by other law firms in the market for legal services and in this legal community, the rates sought by Plaintiff's counsel are consistent with the prevailing market rates and therefore are entirely fair and reasonable, given counsel's experience, qualifications and expertise.

### D. THE NUMBER OF HOURS COUNSEL CLAIMS IS REASONABLE.

The second component of the lodestar figure is the number of hours counsel reasonably expended. Here Plaintiff's counsel spent a total of 183.70 hours in litigating this case. Plaintiffs are entitled to be compensated for all time that would, in the exercise of "billing judgment," be billed to a fee-paying client. *Hensley v. Eckerhart, supra*, 461 U.S. 424, 434, 437; *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987).

It appears from the declarations submitted by both firms representing Plaintiff, and the time sheets attached thereto, that a reasonable number of hours were incurred in litigating and settling this matter, and that the time expended on this case is fair and reasonable. It also appears that billing discretion was exercised in relation to the number of hours worked.

### E. THE LODESTAR SHOULD NOT BE REDUCED DUE TO THE AMOUNT OF JUDGMENT OR THE NUMBER OF CLAIMS ACTUALLY MADE.

The Supreme Court has a rejected the argument that the fees must be proportional with the damages recovered. *Rivera*, 477 U.S. at 581 (footnote omitted); see also *Johnson v. Eaton*, 80 F.3d 148 (5th Cir. 1996); *Carroll v. Wolpoff & Abramson*, 961 F.2d 459 (4th Cir. 1992), cert. denied, 505 U.S. 905 (1992).

Furthermore, the fact that the number of claims that were ultimately filed were less than anticipated does not have any effect on the negotiated Settlement Agreement containing the fees agreement. *Beecher v. Able*, 441 F.Supp. 426 (S.D.N.Y. 1977). Consequently, no reduction of counsel's fees is necessary here.

### F. A MULTIPLIER IS APPROPRIATE IN THIS CASE.

The attorneys' fees incurred by both firms equals **$166,897.75**, not including law clerk time and paralegal time or expenses. Based upon the costs incurred in the amount of $746.50, the amount remaining after those costs are subtracted from the $300,000 agreed upon is $299,253.50 in legal fees. That amount results in a request for a multiplier of 1.793 % applied to $166,897.75. It is the undersigned opinion that a multiplier of 1.793 % is justified. The Court can award a multiplier in this case under any of several grounds and attorneys' fees are often increased by multipliers. This Court has considered the factors enunciated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69 (9th Cir. 1975), *cert. denied sub nom. Perkins v. Screen*

*Extras Guild, Inc.*, 425 U.S. 951 (1976) in arriving at the multiplier herein.[1] A multiplier is justified especially if the case is of a type that would not be taken by counsel unless an expectation of a fee enhancement was expected. This case is just such a case. Here there is no fee shifting statute and no plaintiff would likely pay any attorney's hourly rate if the potential benefit is limited as under the TCPA to allow only $500 in damages for each incident if negligent or $1,500 if intentional. Thus, no attorney would likely take on such a case nor would the client likely be able to find any attorney to represent him in such a case. Campion Decl. at para. 3, 4. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 717-719, 107 S.Ct. 3078 (1987). *See also Fadhl v. City and County of San Francisco*, 859 F.2d 649 (9th Cir. 1986) where a multiplier of 2 was awarded in a Title VII case as the amount expected by attorneys in the local San Francisco market. The court found that a multiplier was necessary when the case would not have been filed by counsel without an expectation of a multiplier in the local market. Accord, *Clark v. City of Los Angeles*, 803 F.2d 987, 991-992 (9th Cir. 1986) (multiplier of 1.5 confirmed on appeal as justified); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-946 (9th Cir. 2007); *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002) (1.5 multiplier allowed).

The Court should also consider the delay in obtaining any fee in its award of a multiplier. *Barjon v. Dalton*, 132 F.3d 496, 502-503, (9th Cir. 1997). Here this case was filed in August, 2007, and any payment of fees

---

[1] The *Kerr* factors include: (1) the time and labor required; (2) the novelty and difficulty of the issues involved; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent;(7) time limitations imposed by the case; (8) the amount in question and the results obtained; (9) the experience, reputation, and ability of the attorneys (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.*, 562 F.2d at 69-70.

and costs will likely be paid about seventeen months after the case was filed, a considerable delay that should justify adding to the multiplier here.

Plaintiff's counsel have incurred **$166,897.75** in attorneys' fees under their lodestar (not including about $1,738.50 in law clerk and paralegal time incurred). Furthermore, that lodestar amount includes what Plaintiffs' counsel anticipates will be required to see the case to conclusion, approximately an additional 30 hours. Plaintiff's counsel anticipate it will take that amount of time to review compliance documents associated with the stipulated injunction, monitoring claims payments, answering class members inquiries and allocation and distribution of the *cy pres* award.

Counsel also incurred $746.50 in costs to date. Therefore, they are seeking a multiplier of 1.793 %. Application of the relevant factors as enunciated under *Kerr* confirms that a multiplier of 1.793 % applied to the loadstar of **$166,897.75** is appropriate. The result of applying a multiplier of 1.793 % to the established loadstar results in a total fee award of $299,253.50. Therefore, based on the above, an adjusted fee award after assessing the multiplier results in a fee award of $299,253.50.

### G. PLAINTIFF IS ENTITLED TO RECOVER ALL LITIGATION COSTS

Plaintiff's counsel seeks an amount of $746.50 as costs, as part of the $300,000 attorneys' fees and costs award. These costs were reasonably incurred as part of the action. Long distance telephone and faxing expenses, as well as copying and postage have been awarded as costs. *Sousa v. Miguel*, 32 F.3d 1370, 1374 (9th Cir. 1994). Recoverable costs include travel, photocopies, lodging, postage, telephone calls, and computerized research. Libertad v. Sanchez, 134 F.Supp.2d 218, 236 (D.P.R. 2001). After review of the costs submitted by Plaintiff's counsel as detailed in the Swigart Fee Declaration, those costs are found to be reasonable and appropriate.

## V. CONCLUSION

For the reasons set forth above, the undersigned respectfully recommends that the Court grant Plaintiff's attorneys' lodestar request in the amount of **$166,897.75**, apply a multiplier of 1.793 % and allow costs in the amount of $746.50 for a total award of attorney fees and costs in the amount of $300,000, consistent with the terms in the Settlement Agreement, and enter the Order Granting Attorney Fees and Costs submitted herewith.

IT IS SO RECOMMENDED,

This 5th day of JANUARY 2009.

_____
Special Master Judge Herbert B. Hoffman (Ret.)